UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANCINE M. HARKES,** | Civil Action No.: 2:09-cv-02556 |
| Plaintiff, | |
| v. | OPINION |
| **THE ACCESSORY CORP., INC., "HANGER HEADQUARTERS," and STEVEN SUTTON,** *Individually and in his official capacity as officer and owner of* **THE ACCESSORY CORP., INC, "HANGER HEADQUARTERS," and ABC CORPORATION,** | HON. WILLIAM J. MARTINI |
| Defendants. | |

**MEMORANDUM OPINION**[1]

**I.   INTRODUCTION**

On May 28, 2009, Plaintiff, Francine M. Harkes, filed a complaint in Hudson County Superior Court against Defendants, including, The Accessory Corp., Inc. ("TAC") (her former employer), Hanger Headquarters, and Steven Sutton both individually and in his official capacity as officer and owner of TAC and Hanger Headquarters. The complaint was removed to federal court, and on September 22, 2009, Plaintiff filed a four count Amended Complaint, alleging breach of contract, breach of the duty of good faith and fair dealing,

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

promissory estoppel, and fraud in the inducement. All four counts in the Amended Complaint are brought against all Defendants.

Before the Court is Defendants' Motion to Dismiss. The Court, for the reasons elaborated below, will **GRANT** in part, and will **DENY** in part, Defendants' Motion. Specifically, the Court will **DISMISS** Counts I and II against Defendant Sutton individually, and will **DISMISS** all Counts against Defendant Hanger Headquarters. The motion is **DENIED** in all other respects.

## II.  FACTUAL BACKGROUND ALLEGED IN THE AMENDED COMPLAINT

Harkes alleges that her former employer, TAC, breached its employment contract with her when she was prematurely terminated, without cause, on January 23, 2009. Prior to accepting a position with TAC as Vice President of Marketing, Harkes had held a similar position with a competitor of TAC. On August 30, 2007, after being contacted by a recruiter on behalf of Defendants, Harkes met with Defendant, Steven Sutton and other managerial employees of TAC. The meeting took place at Sutton's second home in Deal, New Jersey where the parties discussed the terms of Harkes's employment with TAC, as well as the financial strengths and reputation of TAC. That same day, Harkes communicated with Sutton by email regarding the terms of employment, specifically including, *inter alia*, a specified salary structure for the first two years and a "car or car allowance." In subsequent communications with Sutton, Harkes indicated to Sutton that she had received an offer of a two year employment contract from a competing company. Harkes asked Sutton if

Defendants would match that offer, and Sutton responded: "not a problem." After receiving that response from Sutton, Harkes leased a luxury SUV and began her employment with TAC.

After her termination from TAC in early 2009, Harkes filed a complaint, subsequently superseded by the Amended Complaint, and Defendants' brought the instant motion to dismiss.

### III.   STANDARD OF REVIEW

The Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## IV.   ANALYSIS

The Motion asserts a number of defenses. This opinion responds to each in turn, as well as the parties' choice of law dispute.[2]

### A.   CHOICE OF LAW

When sitting in diversity, a federal court applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Here, the forum state is New Jersey.

---

[2] The basis of the Court's jurisdiction is diversity pursuant to 28 U.S.C. § 1367 (2003); *Hertz Corp. v. Friend*, No. 08-1107, 2010 WL 605601 (U.S. Feb. 23, 2010) (adopting nerve center

4

> Under New Jersey law, the governing law in a contract case is that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties. To determine which state has more significant contacts with the parties and the contract, New Jersey courts look to the following non-exclusive contacts listed in § 188 of the Restatement (Second) of Conflict of Laws:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*National Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 446-447 (D.N.J. 1999).[3]

Defendants argue that New York law controls this matter because New York has the most contacts to this dispute. Defendants also claim that TAC and Hanger Headquarters are incorporated and operate in New York, thereby creating significant contacts with New York. Plaintiff contests application of New York law in favor New Jersey law. As such, the Court must first ascertain the applicable law in this case.

Having considered the non-exclusive factors listed in § 188, it appears to the Court that the two factors listed by Defendant – the state in which TAC and Hanger Headquarters are incorporated and generally operate – are not dispositive. The Amended Complaint alleges that: (1) Plaintiff resides in New Jersey; (2) Plaintiff was contacted by an agent of Defendant while in New Jersey; (3) Defendant Sutton owns a home in New Jersey; (4) the purported

---

test for principal place of business). Jurisdiction is not contested.

[3] Similar to contract claims, when resolving choice of law disputes stemming from tort claims, New Jersey courts apply the law of the state with most significant contacts in light of the factors enumerated in § 145 of the Restatement (Second) of Conflict of Laws. *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). These factors are similar to the factors

negotiations took place in Defendant Sutton's home in New Jersey; (5) subsequent communications were made while Plaintiff was in New Jersey; and, finally, (6) Plaintiff did the majority of her work from her home in New Jersey. For these reasons it appears, New Jersey law governs this dispute.

   B.  COUNT I–THE BREACH OF CONTRACT CLAIM

Count I alleges that there was a valid employment contract between Plaintiff and Defendants for a period of two years and Defendants breached that agreement by prematurely terminating the Plaintiff without good cause, while failing to pay the balance of her salary for the remaining time on the contract. Defendants argue that the law presumes employment at will. *Bernard v. IMI Sys.*, 618 A.2d 338, 345 (N.J. 1993) (explaining that employment-at-will is presumed under New Jersey law, absent a clear contract). Defendant also asserts that the Amended Complaint fails to allege that a contract was formed between Plaintiff and Defendants, and that "at most, the Complaint alleges that Defendants indicated that they were 'willing' to enter into a contract upon certain terms." Defendants argue that such "agreements to agree" are unenforceable as a matter of law.

To prove the existence of a valid contract, a party must show that: (1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and, (4) there was certainty in the terms of the agreement. *Big M, Inc. v. Dryden Advisory Group*, Civil Action No. 08-3567 (KSH), 2009 U.S. Dist. LEXIS 55423, at *35 (D.N.J. June 29, 2009). Additionally, under New Jersey law, employment contracts may be implied

---

enumerated under § 188. Again, it would also appear that New Jersey law applies.

through circumstances of employment. *Troy v. Rutgers*, 774 A.2d 476, 482 (N.J. 2001) ("Oral promises, representations, employee manuals, or the conduct of the parties, depending on the surrounding circumstances, have been held to give rise to an enforceable obligation on the part of an employer."). These implied contractual terms are considered as binding as express contractual terms. Further, New Jersey courts have held that determining whether the parties' actions were sufficient to create an implied contractual term is a question of fact. *Id.*; *see also Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 553 (N.J. 1994); *Labus v. Navistar Int'l Transp. Corp.*, 740 F. Supp. 1053, 1063 (D.N.J. 1990).

The Amended Complaint alleges that a meeting took place between the parties in which terms of employment were discussed. Subsequent to that meeting Plaintiff sent an email to Defendant Sutton listing the terms and conditions discussed to date, including compensation for the first two years of employment. Further email contact was made in which Plaintiff asked if Defendants would be willing to match a competitor's two year contract offer. Defendant Sutton responded: "not a problem." Plaintiff then leased a luxury SUV and began her employment with TAC pursuant to the terms discussed in the email.

Defendants argue that the Plaintiff has failed to allege that there was a meeting of the minds. However, the allegation that Defendant responded "not a problem" to Plaintiff's request that Defendants match a competing offer, and the allegation that Plaintiff and Defendants acted in conformity with those terms without any further negotiation until Plaintiff's termination, if taken as true, could support a fact-finder's concluding that there

was a meeting of the minds. *Cf. Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir. 2009) (holding that when examining the intent of the parties to contract, it is their objective manifestations and not their subjective intent that matter).

Further, the allegations could also support a reasonable fact-finder's concluding that Defendants' statements, made over email, created circumstances in which an implied employment contract existed. *Troy*, 774 A.2d at 486. The Amended Complaint specifically alleges that Defendant Sutton responded "not a problem" when Plaintiff asked him whether he would match the contractual terms of a competing offer. The Amended Complaint alleges that the only thing left to put the agreement into force was for Plaintiff to accept the offered position, which she did, and it further alleges that once Plaintiff began her employment at TAC, Defendants proceeded to perform consistently with the terms specified in the email correspondence. This is more than an agreement to agree or an invitation for further negotiations. Fairly read, the Amended Complaint alleges a meeting of the minds.

The existence of an employment contract, express or implied, would overcome the presumption of at-will-employment, entitling the Plaintiff to enforce the terms the contract. *Troy*, 774 A.2d at 482 ("Implied contract terms generally are considered as binding as express contract terms."); *Bernard*, 618 A.2d at 345 (holding that a clear contract will overcome the presumption of employment-at-will). In short, the allegations of the Amended Complaint could support a fact-finder's concluding that an employment contract existed between Plaintiff and Defendants.

### C. COUNT II–COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

Count II alleges that Defendants' conduct breached their covenant of good faith and fair dealing. Defendants argue that because the Amended Complaint fails to sufficiently allege that a contract was formed, the claim for breach of the covenant of good faith and fair dealing must fail along with the breach of contract claim. But this Court has rejected Defendants' position: that the Amended Complaint does not sufficiently allege that a contract was formed. *See supra* Part IV[B]. As such Defendants' argument fails. *See Glavan v. City of Irvington*, L-6270-02, 2008 WL 2840881, at *7 (N.J. Super. App. Div. July 25, 2008).

### D. COUNT III–PROMESSORY ESTOPPEL

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008). Defendants attack the first prong of Plaintiff's promissory estoppel claim, arguing no allegations of a clear and definite promise were made. In other words, Defendants argue that the communications over email constituted only a willingness to enter into an agreement, and not a definitive promise of employment sufficient to support a claim of promissory estoppel.

However, in making her *prima facie* claim, Plaintiff need not allege that the promise was made with explicit detail in order for Defendant Sutton's statements to constitute a concrete promise. *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1326 (N.J.

Super. App. Div. 1998). For example, in *Peck v. Imedia, Inc.*, 679 A.2d 745 (N.J. Super. App. Div. 1996), despite plaintiff's status as an at-will-employee, the employment contract offer letter sent by defendant – detailing position title, benefits, and salary – was sufficient in supporting the first prong of plaintiff's promissory estoppel claim. The court held that even though plaintiff was an at-will employee subject to termination at anytime, there may be losses incident to reliance on the job offer itself. In this case, Plaintiff alleges that she had exchanged emails with Defendant Sutton explaining the benefits, salary, and duration of a requested employment contract, to which Defendant Sutton responded: "not a problem." Plaintiff further alleges that she relied on that statement in leaving her former employer, rejecting the competing offer, and accepting the position at TAC. These allegations, if true, could support a fact-finder's determining that a concrete promise had been made to employ Plaintiff for two years. *Peck*, 679 A.2d at 753-54.

E.   COUNT IV–FRAUD IN THE INDUCEMENT

Count IV alleges that Defendant Sutton misrepresented material information about TAC which Plaintiff relied upon: in deciding to leave her former employer, in turning down a competing offer, and in accepting the position at TAC.

Defendants argue that Plaintiff's fraud claim fails under the heightened pleading requirements of Fed. R. Civ. P. 9(b). Defendants contend that for the fraud claim to survive, the Amended Complaint must allege, *inter alia*, that Defendants knew the statements were false, and intended to defraud the Plaintiff. *See Commerce Ins. Servs. v. Szczurekat*, Civil

Action No. 05-3536, 2006 U.S. Dist. LEXIS 515, at *20-21.(D.N.J. Jan. 6, 2006).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). It has been established in this Court that:

> The purpose of the rule is to place the defendant on notice of the precise misconduct with which it is charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. In applying Rule 9(b), focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules. The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading.

*Commerce Ins. Servs.*, 2006 U.S. Dist. LEXIS 515, at *18 n.8.

In the Amended Complaint, Plaintiff alleges that during the meeting in Deal, New Jersey, Defendant Sutton misrepresented TAC's economic viability by claiming that TAC owned the factories which manufactured its products and that TAC had large accounts with large companies, including Kohl's and J.C. Penney. Plaintiff alleges that these claims were misrepresentations which were made in the hope that she would rely upon them in making her choice to become employed at TAC. Plaintiff further alleges that she did rely upon those statements in accepting the employment offer, only to later learn that such statements were false. Defendant Sutton's alleged status as an officer and shareholder of TAC, if proven along with the alleged misstatements themselves, could support a fact-finder's determining that he knew that the statements were actually false when made. Further, the allegations

specify the subject matter of the statements, as well the time and place that they were made. Accordingly, the pleadings provide adequate notice to the Defendants for the purpose of responding to the alleged misrepresentations. *See* Fed. R. Civ. P. 9(f).

### F. CLAIMS AGAINST HANGER HEADQUARTERS

Plaintiff has included Hanger Headquarters – a corporation in which Defendant Sutton is an officer and shareholder – as a Defendant in this action. Defendants argue in the Motion that all claims against Hanger Headquarters should be dismissed because no allegations against that entity have been made. Defendants further assert that it is inappropriate to "bootstrap" Hanger Headquarters to the action as an alter ego based solely on the allegation that Defendant instructed Plaintiff to make her health insurance premiums payable to Hanger Headquarters at a time *after* Plaintiff was terminated.

"[I]n order to warrant piercing the corporate veil of a parent corporation, a party must establish two elements: (1) that the subsidiary was dominated by the parent corporation, and (2) that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law." *Verni* ex rel. *Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. App. Div. 2006). Additionally, the burden of proof is on the party seeking to have the court disregard the general principle that the corporation is a separate entity. However, this Court has recognized that piercing the corporate veil is a fact sensitive issue usually left to the jury, "unless there is no evidence sufficient to justify disregard of the corporate form." *G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, 380

F. Supp. 2d 469, 477 (D.N.J. 2005).

Taking Plaintiff's allegations as true, it can be inferred – from the allegation that Defendant instructed Plaintiff to make her health insurance premiums payable to Hanger Headquarters – that Hanger Headquarters and TAC were comingling funds, thus Defendants had disregarded the corporate formalities sufficiently to satisfy the first element. *Verni* ex rel. *Burstein*, 903 A.2d at 498. However, this singular allegation is insufficient in regard to meeting the second element. Assuming that the corporate formalities were disregarded, the Amended Complaint makes no allegations that adherence to the separateness of TAC as an entity "would perpetrate a fraud or injustice, or otherwise circumvent the law." *Id.*; *see also Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 172. (3d Cir. 2002) (holding that the plaintiff must allege that the dominating corporation must utilize the dominated corporation to perpetrate a fraud or injustice). On these allegations, there is no reason to believe that the two entities were comingling funds at the time the wrong was committed, or how the purported disregard for the corporate form worked any injustice.

### G. CLAIMS AGAINST STEVEN SUTTON INDIVIDUALLY

Plaintiff has included Steven Sutton, officer and shareholder of TAC and Hanger Headquarters, individually as a Defendant in this action. Defendants argue that all claims against Steven Sutton should be dropped as no allegations were pled against him in his individual capacity, and because the Amended Complaint and the attached exhibits indicate that Sutton dealt with Plaintiff only in his capacity as an officer of TAC.

13

Under New Jersey law, "an officer who causes his corporation to breach a contract for what he conceives to be the best interest of the corporation does not thereby incur personal liability." *Zeiger v. Wilf*, 755 A.2d 608, 622 (N.J. Super App. Div. 2000). Because the Amended Complaint fails to allege that Defendant Sutton's interactions with the Plaintiff with regard to the breach of contract claim were made with anything but the best interests of TAC in mind, Plaintiff's contract related claims (Counts I and II) against Defendant Sutton must fail.

However, a "director or officer who commits a tort, or who directs the tortuous act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort. Corporate officers are liable to persons injured by their own torts, even though they were acting on behalf of the corporation and their intent was to benefit the corporation." *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. App. Div. 1995). "[T]he essential predicate for application of the theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 275 (N.J. 2002). As explained in Part IV[D], *supra*, Plaintiff has sufficiently alleged a promissory estoppel claim which is governed by tort principles, and therefore individual liability may attach to Defendant Sutton as the corporate officer carrying out the tort. Additionally, Plaintiff's fraud in the inducement claim, discussed in Part IV[E], *supra*, may also support individual liability as a tort claim. *Id.* at 272 ("New Jersey cases that

14

have applied the participation theory to hold corporate officers personally responsible for their tortious conduct generally have involved intentional torts. More specifically, the majority of the cases have involved fraud and conversion."). Accordingly, the contract claims (Counts I and II), against Defendant Sutton individually will be dismissed; while the promissory estoppel and fraud in the inducement claims (Counts III and IV) will not be dismissed.

## V.   CONCLUSION

For the reasons elaborated above, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion. The Court **DISMISSES** Counts I and II against Defendant Sutton individually, and the Court **DISMISSES** all Counts against Defendant Hanger Headquarters. The motion is **DENIED** in all other respects. An appropriate order accompanies this opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

**DATE: March 10, 2010**